# 14-3123-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

CBS Broadcasting Inc., NBC Studios, Inc., Universal Network Television, LLC, NBC Subsidiary (KNBCTV), Inc., Twentieth Century Fox Film Corporation, Fox Television Stations, Inc., ABC Holding Company, Inc., Disney Enterprises, Inc., NBC Studios LLC, NBC Subsidiary (KNBCTV) LLC, American Broadcasting Companies, Inc., Big Ticket Television, Inc., CBS Studios Inc., Open 4 Business Productions LLC,

*Plaintiffs-Appellees,*

—against—

FilmOn.Com, Inc.,

*Defendant-Appellant,*

Alkiviades David,

*Respondent-Appellant.*

―――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

―――――――

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT AND RESPONDENT-APPELLANT

Ryan G. Baker
Baker Marquart LLP
10990 Wilshire Boulevard,
  4th Floor
Los Angeles, California 90024
(424) 652-7800

*Attorneys for Defendant-Appellant
and Respondent-Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for

Appellant FilmOn.Com, Inc., certifies that FilmOn.Com, Inc., is a privately held

corporation. The following is a list of its corporate parents, affiliates and/or

publicly held companies that own 10% or more of its stock:

ANAKANDO LTD (BVI).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. i

PRELIMINARY STATEMENT .......................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ....................... 1

STATEMENT OF THE CASE ............................................................ 3

    A.  The Nature of the Case ........................................................... 3

    B.  The Course of Proceedings and Disposition Below ...................... 4

STATEMENT OF FACTS ................................................................. 7

    I.  *FilmOn* and *ivi* ................................................................. 7

    II.  The California and D.C. Actions ............................................ 10

    III.  Appellees' Contempt Motion ............................................... 14

SUMMARY OF THE ARGUMENT ................................................... 16

STANDARD OF REVIEW .............................................................. 18

ARGUMENT .............................................................................. 19

    I.  The District Court Abused Its Discretion In Finding FilmOn in Contempt ........................................................................ 19

    II.  The Court's Inclusion of Mr. David In The Judgment Was Improper 23

    III.  The District Court Abused Its Discretion In Awarding Sanctions ...... 25

    IV.  Any Award Of Attorneys' Fees Was An Abuse Of Discretion ............. 29

CONCLUSION ............................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
   134 S.Ct. 2498 (2014) ................................................. 2, 6, 12, 13, 14, 17, 19, 23

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
   847 F. Supp. 2d 373 (S.D.N.Y. 2012) ....................................................11

*Cal. Artificial Stone Paving Co. v. Molitor*,
   113 U.S. 609 (1885)..........................................................................16

*Carco Group, Inc. v. Maconachy*,
   718 F. 3d 72 (2d Cir. 2013) ................................................................18

*Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ......................................3, 5, 10, 11, 12, 19

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) .......................................................17, 20

*E.E.O.C. v. Local 638*,
   81 F.3d 1162 (2d Cir. 1996) ..............................................................18

*E.E.O.C. v. Local 638, Sheet Metal Workers' Int'l Ass'n*,
   889 F.Supp. 642 (S.D.N.Y.1995) .......................................................30

*Fox Television Stations, Inc. v. BarryDriller Content Systems Plc.*,
   2:12-cv-6921 (C.D. Cal. Aug. 10, 2012) ............................................11

*Fox Television Stations, Inc. v. FilmOn.TV Networks, Inc.*,
   Case No. 13-7145, Dkt. No. 1476332 (D.C. Cir. Jan. 23, 2014)......................12

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
   1:13-cv-00758 (D.D.C. May 23, 2013) ............................................11

*Int'l Union, United Mine Workers v. Bagwell*,
   512 U.S. 821 (1994)..........................................................25, 26, 27, 28

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir.1995) ..............................................................29

i

*Latino Officers Ass'n City of New York, Inc. v. City of New York*,
558 F.3d 159 (2[d] Cir. 2009) ............................................................15, 16, 17, 20

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
478 U.S. 421 (1986).................................................................................25

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir.2010) ..................................................................18, 29

*NBCUniversal Media, LLC v. Aereokiller LLC*,
Case No. 13-55156, Dkt. No. 125 (9th Cir. Jan. 27, 2014) ...............................12

*NBCUniversal Media, LLC v. FilmOn X, LLC*,
No. 2:12-cv-06921 (C.D. Cal. Aug. 13, 2012) ..................................................11

*New York State Nat. Org. for Women v. Terry*,
952 F.Supp. 1033 (S.D.N.Y. 1997) ..........................................................29, 30

*NLRB v. Hopwood Retinning Co.*,
104 F.2d 302 (2d Cir.1939) .....................................................................16

*NLRB v. Local 3, Int'l Bhd. Of Elec. Workers*,
471 F.3d 399, 405 (2d Cir. 2006) ..............................................................28

*North American Oil Co., Inc. v. Star Brite Distributing, Inc.*,
14 Fed.Appx. 73 (2d Cir. 2001)................................................................29

*Parademics Electromedicina Comercial, Ltd. v. GE Med Sys. Info. Techs. Inc.*,
369 F.3d 645, 655 (2d Cir. 2004) .......................................................19, 21, 22

*Perez v. Danbury Hosp.*,
347 F. 3d 419 (2d Cir. 2003) ...................................................................18

*United States ex rel. IRS v. Norton*,
717 F.2d 767 (3d Cir.1983) ................................................................17, 20

*United States v. Local 1804-1, Int'l Longshoremen's Ass'n* 44 F.3d
1091 (2d Cir.1995)...............................................................................18

*Vuitton et Fils S.A. v. Carousel Handbags*,
592 F.2d 126 (2d Cir.1979) .....................................................................29

*Weitzman v. Stein*,
  98 F.3d 717 (2d Cir.1996) ................................................................29

*WNET, Thirteen v. Aereo, Inc.*,
  712 F.3d 676 (2d Cir. 2013) ............................................................12

*WPIX, Inc. v. ivi, Inc.* 691 F.3d 275 (2d Cir. 2012) *cert. denied*,
  133 S. Ct. 1585, 185 L. Ed. 2d 607 (U.S. 2013)....................................9

*WPIX, Inc. v. ivi, Inc.*,
  765 F. Supp. 2d 594 (S.D.N.Y. 2011) .............................................8, 9

**Federal Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

Copyright Act of 1976, 17 U.S.C. §101 *et seq.* .......................................1

**Regulations**

2014 Copr.L.Dec. P 30,639, 111 U.S.P.Q.2d 1638, 60
  Communications Reg. (P&F) 1457 ...................................................7

## PRELIMINARY STATEMENT

Defendant-Appellant FilmOn.Com, Inc. ("FilmOn.Com") and non-party Alkiviades David (together, "Appellants") appeal from a final judgment (SPA-1, SPA-20)[1] entered pursuant to a decision by the United States District Court for the Southern District of New York (Buchwald, N.) holding FilmOn.Com and Mr. David in contempt of the August 8, 2012 Consent Order of Judgment and Permanent Injunction(the "Injunction"). (A-140 – A-144).

## JURISDICTIONAL STATEMENT

The court below had subject matter jurisdiction pursuant to the Copyright Act of 1976, 17 U.S.C. §101 *et seq.* and 28 U.S.C. § 1331.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Final judgment was entered on August 15, 2014 ("Judgment"). (SPA-20 – SPA-22). Defendant and non-party Mr. David filed a timely notice of appeal on August 25, 2014. (A-627).

Appellants appeal from final judgment on all of Appellees' contempt claims in this action against the sole defendant, FilmOn.Com, as well as Mr. David, a non-party.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.       Did the district court abuse its discretion holding FilmOn.Com in

---

[1] Throughout this brief, "SPA" shall refer to the joint Special Appendix and "A" shall refer to the Parties' Joint Appendix.

1

contempt after the Supreme Court decided *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 134 S.Ct. 2498 (2014) ("*Aereo*"), in light of Appellees'[2] previous position that FilmOn X, LLC's mini-antenna technology was not barred by the Injunction and without any further action by the district court in *Aereo*?

2.      Was it an abuse of discretion to hold Mr. David, a non-party, in contempt where there was no admissible evidence that Mr. David took or directed any action in violation of the Injunction other than an unauthenticated statement in a press release, purportedly made by Mr. David and based solely on his role as CEO?

3.      Did the district court err in awarding any sanctions against Appellants in light of FilmOn.Com's cessation of the alleged contumacious conduct within hours of receiving notice of Appellees' position and fifteen days before the hearing on contempt?

4.      Did the district court abuse its discretion in awarding Appellees attorneys' fees where there was no demonstration of willfulness other than Appellants' willful actions to halt the allegedly contumacious conduct within hours of receiving notice of Appellees' contempt papers?

---

[2] "Appellees" refers to plaintiffs collectively, CBS Broadcasting Inc., NBC Studios, Inc., Universal Network Television, LLC, NBC Subsidiary (KNBCTV), Inc., Twentieth Century Fox Film Corporation, Fox Television Stations, Inc., ABC Holding Company, Inc., Disney Enterprises, Inc., NBC Studios LLC, American Broadcasting Companies, Inc., Big Ticket Television, Inc., CBS Studios Inc. and Open 4 Business Productions LLC

2

## STATEMENT OF THE CASE

**A.    The Nature of the Case**

This case was originally brought by Appellees against FilmOn.Com for copyright infringement.  (A-69).  FilmOn.Com had operated by picking up Appellees' broadcast content from cable and streaming the content (and other content) over the Internet to users.  (A-341 – A-342).  After Appellees sued FilmOn.Com, the parties settled and the district court entered the Injunction, which was stipulated.  (A- 140).  Almost a year after the underlying case was resolved, a company related to FilmOn.Com, eventually known as FilmOn X, LLC, ("FilmOn X") began offering users a new service, which also permitted them to receive certain broadcast programming over the Internet.   (A-341 – A-342).  FilmOn X utilized a technology similar to that employed by Cablevision, as discussed in *Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008)("*Cablevision")* and Aereo.  (A-341 – A-342).  After the Supreme Court held that Aereo's performance of broadcast programming was public, *Aereo*, 134 S.Ct. at 2510 , both Aereo and FilmOn X ceased offering broadcast programming to their customers.  (A-341 – A-344).  Because FilmOn did not remove broadcast programming at the same time as Aereo acted on its internal decision to do so, the district court found FilmOn.Com and its CEO, Mr. David, in contempt of an order Appellees had never previously cited as a basis to prevent FilmOn X from offering

its new technology. (SPA-17). FilmOn.Com and Mr. David appeal that order, which found them in contempt and awarded sanctions against them for conduct that had already been cured. Civil contempt sanctions are meant to be coercive, not punitive. Here, given that the allegedly contemptuous conduct had ceased well before the court's order, the award of sanctions and attorneys' fees, particularly against Mr. David, was a clear abuse of discretion.

**B.    The Course of Proceedings and Disposition Below**

Nearly four years ago, a coalition of broadcast television networks alleged that Appellant FilmOn.Com violated copyright law by streaming broadcast content over the Internet. (A-9; A-341 – A-344). At the time, FilmOn.Com operated by picking up Appellees' broadcast content from cable companies and streaming that content to computers and mobile devices over the Internet. (A-341 – A-342). FilmOn.Com did not use any mini-antenna technology, and it did not require a user to tune into and record a unique copy of a particular program. Pursuant to the settlement among the parties, on August 8, the district court entered the Injunction, which provides:

> [FilmOn.Com is] PERMANENTLY RESTRAINED AND ENJOINED from infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106 (1)-(5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright.

(A-144).  Since the issuance of the Injunction, FilmOn.Com has no longer employed the Internet streaming technology that was at issue in this action.  (A-341 – A-344).  Instead, FilmOn X, a separate company and business partner of FilmOn,[3] developed and deployed a new technology that was specifically designed to comply with Second Circuit law, as articulated in *Cablevision*.  (A-341 – A-344).  Consistent with *Cablevision*, the FilmOn X service allowed consumers access to their own remotely located antenna, thereby enabling those consumers to create and access, from any Internet-enabled device, unique copies of the same over-the-air broadcast programming that they would be able to access freely with a traditional "rabbit ears" antenna.  (A-341 – A-344).  FilmOn X's "Teleporter" system relied on the same mini-antenna/DVR technology.  (A-341 – A-344).

After FilmOn X launched its new mini-antenna/DVR technology, Appellees initiated legal action in several jurisdictions.  (A-341 – A-344).  Appellees did not initiate any proceeding in the Southern District of New York related to the FilmOn X technology, although they did initiate other proceedings in the Southern District of New York, such as proceedings related to FilmOn.Com's video-on-demand service.  (A-145, et seq.).  Appellees never cited the Injunction as a basis to prevent FilmOn.Com from offering its mini-antenna service until they served their

---

[3] FilmOn X is a business partner and sister company to FilmOn.Com, Inc.

contempt papers on the afternoon of July 3.[4]  Appellees made a strategic decision to pursue new copyright actions against FilmOn X in the Central District of California and the District of Columbia , rather than argue that the FilmOn X technology was covered by the parties' settlement or the Injunction.

Several days after the Supreme Court's decision in *Aereo*, 134 S.Ct. 2498 (2014)*, Aereo apparently ceased all broadcast transmissions.  (SPA-17).  FilmOn X was not privy to Aereo's internal decision-making and continued to operate.  A couple days after Aereo stopped its transmissions, on July 3, Appellees filed for a contempt order against Defendant FilmOn.Com based on Teleporter's use of mini-antenna technology.  (A-270 – A- 340).  In their contempt papers, Appellees argued for the first time that FilmOn X's mini-antenna technology violated the Injunction.  Prior to their filing, Appellees provided FilmOn.Com with no notice of their new position.  Due to the holiday weekend – and the fact that the papers were not filed on the ECF system – FilmOn.Com did not receive notice of the filing until Monday, July 7.  (A-335 – A-340).  FilmOn X and Teleporter stopped all broadcast transmission of Appellees' programming on July 7.  (A-341 – A-344).  In spite of that immediate corrective action, Appellees refused to withdraw their contempt request.  (A-335 – A-336).

---

[4] Due to holiday travel and the fact that the Appellees' contempt documents were not electronically filed, counsel for FilmOn.Com did not see the contempt documents until Monday, July 7.  Hours later, FIlmOn X stopped transmitting Appellees' broadcast programming.

On July 24, 2014, Hon. Naomi R. Buchwald found FilmOn.Com and Mr. David in contempt and sought briefing as to the relief to be granted, such that the ruling was not final at that time. *See CBS Broadcasting Inc. v. FilmOn.com, Inc.*, Slip Copy, 2014 WL 3702568 (S.D.N.Y.), 2014 Copr.L.Dec. P 30,639, 111 U.S.P.Q.2d 1638, 60 Communications Reg. (P&F) 1457 ("Order") (SPA-1). On August 15, 2014, Judge Buchwald issued her final ruling in the case. *See CBS Broadcasting Inc. v. FilmOn.com, Inc.*, Slip Copy, 2014 WL 4088695 (S.D.N.Y., 2014) (SPA-20). The district court held FilmOn.Com in contempt and awarded sanctions and attorney's fees against "FilmOn," defined to include non-party Alkiviades David. *Id.* FilmOn.Com and Mr. David appeal this contempt finding, including the associated award of sanctions and fees. On August 25, 2014, FilmOn.Com and Mr. David filed a timely Notice of Appeal from that judgment. (A-627)**.**

## STATEMENT OF FACTS

### I.    *FilmOn* **and** *ivi*

Nearly four years ago, in September and October 2010, a coalition of broadcast television networks filed copyright actions in the Southern District of New York against FilmOn.Com and ivi, Inc. ("ivi"). (A-363). The broadcasters alleged that these companies violated copyright law by streaming broadcast content over the Internet. (A-365).

7

In 2010, FilmOn.Com operated by picking up over-the-air broadcast signals from cable and streaming the content (and other content) over the Internet to users. (A-341 – A-344, ¶ 3. The complaint against FilmOn.Com alleged that:

> [D]efendant has been streaming over the Internet, to subscribers located throughout at least the United States, numerous broadcast stations and the copyrighted programming on those stations – all without the consent of the affected stations or copyright owners. Defendant's actions are similar to those of the defendants in *WPIX, Inc. v. ivi, Inc.*, No. 1:10-cv-07415-NRB (S.D.N.Y., filed Sep. 28, 2010), in which the plaintiffs here are among the complainants.

(A-384 at ¶ 1; A-69 at ¶ 1).

Shortly after filing complaints against FilmOn.Com and ivi, the broadcast networks moved for a temporary restraining order and preliminary injunction in both actions. They argued that ivi and FilmOn.Com, which then streamed broadcast content over the Internet, did not qualify as cable systems under Section 111 of the Copyright Act and therefore were not entitled to compulsory licenses. (A-394, at A-406) (arguing that "services that stream broadcast signals nationwide over the open Internet are 'vastly different' from other services eligible for the Section 111 compulsory license"); (A-417, at A-427) (arguing that "FilmOn does not satisfy the threshold definition of 'cable system' in Section 111(f) in Section 111(f) of the Copyright Act."). The district court agreed.

On November 22, 2010, the district court entered a temporary restraining order restraining FilmOn.Com "from infringing by any means, directly or

indirectly, any of Plaintiffs' exclusive rights under section 106(1)-(5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright." (A-52).

A couple months later, on February 22, 2011, the district court granted the networks' request for a preliminary injunction. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594 (S.D.N.Y. 2011). Three months later, on May 30, 2012, this Court heard oral argument in an appeal from the district court's preliminary injunction in *ivi*. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (U.S. 2013).

On July 31, 2012 – shortly before this Court issued its opinion in *ivi* – Appellees and FilmOn.Com settled. Pursuant to the settlement, on August 8, the district court entered a Stipulated Consent Judgment and Permanent Injunction, which provides that:

> [FilmOn.Com is] PERMANENTLY RESTRAINED AND ENJOINED from infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106 (1)-(5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright.

(A-144).

Shortly thereafter, on August 27, this Court issued its opinion in *ivi*, affirming the lower court's preliminary injunction order. *WPIX, Inc. v. ivi, Inc.*,

9

691 F.3d 275 (2nd Cir. 2012). Since the issuance of the Injunction, FilmOn.Com has no longer employed the old Internet streaming technology at issue in this action. (A-341 – A-344, at ¶ 4).

## II.    The California and D.C. Actions

After the district court entered the Injunction, FilmOn X developed and deployed a new technology that was specifically designed to comply with the Injunction and this Circuit's decision in *Cartoon Network LP, LLP,* 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"). (A-341 – A-344). In *Cablevision*, this Court ruled that a remote storage DVR system allowing users to record and store programming on central hard drives housed and maintained by the defendant did not violate the public performance rights of copyright owners. *Id.* at 125, 137, 139 (because each RS-DVR transmission was "made to a single subscriber using a single unique copy," the transmission was private, not public).

Consistent with the *Cablevision* decision, FilmOn X deployed a new service that allowed consumers access to their own remotely located antenna, thereby enabling those consumers to create and access, from any Internet-enabled device, unique copies of the same over-the-air broadcast programming that they would be able to access freely with a traditional "rabbit ears" antenna. (A-341 – A-344). This technology is materially different from the old streaming technology previously employed by FilmOn.Com. *Id.*

10

As noted above, after FilmOn X adopted this new mini-antenna/DVR technology, Appellees *never* sought relief from the district court for violation of the Injunction; instead they made the strategic decision to pursue new copyright actions against FilmOn X in the Central District of California and the District of Columbia where the courts were not bound by *Cablevision*. This strategic decision was made after the Southern District of New York denied their motion for a preliminary injunction against Aereo, on July 11, 2012. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 847 F. Supp. 2d 373 (S.D.N.Y. 2012).

In light of that decision, on August 10, 2012, certain of the Appellees filed the first of several new copyright actions against FilmOn X[5] in the Central District of California. *Fox Television Stations, Inc. v. BarryDriller Content Systems Plc.*, 2:12-cv-6921 (C.D. Cal. Aug. 10, 2012) . The other major broadcast networks followed Fox's lead with a related lawsuit of their own in the same forum. *NBCUniversal Media, LLC v. FilmOn X, LLC*, No. 2:12-cv-06921 (C.D. Cal. Aug. 13, 2012) (the "California Actions"). Subsequently, a third lawsuit was filed in the District of Columbia. *Fox Television Stations, Inc. v. FilmOn X, LLC*, 1:13-cv-00758 (D.D.C. May 23, 2013) (the "D.C. Action").

In those actions, Appellees argued FilmOn X's mini-antenna/DVR technology violated their exclusive public performance rights under the Transmit

---

[5] At the time of the initial filing, FilmOn X was known as BarryDriller Content Systems, Plc. ("BarryDriller"). BarryDriller later changed its name to FilmOn X.

Clause. Despite having previously argued to the district court in this case that FilmOn.Com was not a cable system, Appellees repeatedly analogized FilmOn X's service to a cable company in the California Action and the D.C. Action. For example, in those actions, Appellees argued "FilmOn X provides the same type of broadcast retransmission service as cable systems (*e.g.*, Comcast) and satellite carriers (*e.g.*, DirecTV) — retransmitting broadcasts of copyrighted television programs to unlimited numbers of subscribers." (A-435, at A-443).

Although this Circuit, following the *Cablevision* decision,[6] found a substantially similar mini-antenna/DVR technology used by Aereo was legal, the district courts in California and D.C. disagreed and issued preliminary injunctions. (A-473 – A-484). FilmOn X appealed both orders; those appeals subsequently were stayed after the Supreme Court granted a writ of *certiorari* in *Aereo*. *See, e.g., NBCUniversal Media, LLC v. Aereokiller LLC*, Case No. 13-55156, Dkt. No. 125 (9th Cir. Jan. 27, 2014); *Fox Television Stations, Inc. v. FilmOn.TV Networks, Inc.*, Case No. 13-7145, Dkt. No. 1476332 (D.C. Cir. Jan. 23, 2014).

On June 25, 2014, the Supreme Court issued its decision in *Aereo*. It held that Aereo's remote mini-antenna/DVR technology publicly performed copyrighted work. The Court stated that "Aereo's activities are substantially

---

[6] In April 1, 2013, the Second Circuit ruled that Aereo's service was legal and did not infringe on the networks' exclusive rights of public performance. *See WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013).

similar to those of the CATV companies that Congress amended the Act to reach." *Aereo*, 134 S.Ct. at 2501. The Supreme Court found that Aereo's technology is not substantially different from cable systems and, for the Copyright Act's purposes, the small differences did not matter. *See, e.g., id.* ("Viewed in terms of Congress' regulatory objectives, these behind-the-scenes technological differences do not distinguish Aereo's system from cable systems"). Thus, while the Court's opinion in *Aereo* establishes that Aereo engages in public performances under the Copyright Act, it also suggests that Aereo (and, by extension, FilmOn X) may be entitled to compulsory licenses as cable systems under Section 111.

Shortly after the *Aereo* Supreme Court decision, FilmOn Networks issued a press release announcing that it "was always willing to pay royalties." (A-332). Pursuant to Section 111 of the Copyright Act FilmOn X also stated its intention to apply for such licenses. *Id.* On July 10, 2014, FilmOn X filed statements of account with the Copyright Office for cable licenses in 14 markets, including the New York City metropolitan area.[7] (A-344; A-490). Those statements were provisionally accepted by the Copyright Office, which stated that "the question of eligibility of internet-based retransmission services for the section 111 license . . . ha[s] been raised again before the courts." (A-573). That question is presently

---

[7] Aereo has also taken steps to establish its right to a compulsory license. (*See* A-490) (*ABC, et al. v. Aereo, Inc.*, 12-cv-1540 (AJN) (HBP) (consolidated), Doc. No. 313 (July 9, 2014 joint letter to the court regarding the next steps)).

being litigated in several district courts across the country, including California, Illinois and Washington, D.C.

## III.    Appellees' Contempt Motion

A few days after the Supreme Court's *Aereo* opinion issued, Aereo stopped all broadcast retransmissions.  (SPA-17).  FilmOn X continued to operate in the Second Circuit, and both FilmOn X and Aereo prepared statements of account for Section 111 compulsory licenses.  (A-341 – A-344).  On July 3, 2014, Appellees applied for an Order to Show Cause why the district court should not hold FilmOn.Com in contempt for violating the Injunction "by publicly performing copyrighted broadcast television programs in which the Plaintiffs own or exclusively control the copyrights over its 'Teleporter' system."  (A-270).  The "Teleporter" system relies on the same mini-antenna/DVR technology at issue in the pending litigation between Appellees and FilmOn X.  (A-341 – A-344 at ¶ 7).

Appellees did not meet and confer with FilmOn.Com about the Teleporter service before they applied for an Order to Show Cause.  (A-335 – A-337, ¶ 4). Further, because the filing was made on Thursday, July 3, and because the OSC papers were not electronically filed, FilmOn.Com did not learn of the OSC Request until Monday, July 7, when the Court entered the Order to Show Cause

(A-270; A-335 – A-337))[8]

A few hours after receiving notice of the court's order, FilmOn X deactivated the Teleporter service (which was set up so that only local New York City network programming was available). (A-341 – A-344, at ¶¶ 10-11; A-335-A-337 at ¶ 5). FilmOn X also voluntarily removed all network programming from the FilmOn X system. (*Id.*)

Also on July 7, 2014, FilmOn.Com's counsel contacted Appellees' counsel in an attempt to resolve the matter without having to consume further Court and party resources. (A-335- A-337 at ¶ 5). Counsel met and conferred about the OSC Request on July 8. (*Id.*) During the meet and confer, FilmOn.Com's counsel informed Appellees' counsel that FilmOn.Com had voluntarily deactivated the Teleporter service and would not reactivate the service or otherwise retransmit Appellees' content until a specific court order authorized such retransmission. (*Id.*)

To date, FilmOn X has undertaken diligent efforts to ensure ongoing compliance with the Injunction. (A-341 – A-344 at ¶¶ 9, 11; A -355 – A-358 at ¶¶ 5-14).

---

[8] The Request was filed late in the day on July 3, 2014 (the day before the July 4 holiday) and neither FilmOn.Com nor its counsel was aware of it until Monday, July 7, when the Order to Show Cause was entered. (A-341 – A-344 ¶ 10; A-335-.A-337 ¶ 4.) FilmOn.Com was served with paper copies of the filings on July 3. Although these facts do not excuse FilmOn.Com's lack of notice, they explain FilmOn.Com's delay in taking corrective action and show FilmOn.Com's diligence in taking such action.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in finding FilmOn.Com and Mr. David in civil contempt. A contempt order is a "'potent weapon,' that is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct,'" *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (Citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885). Because of this, "[a] contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *Id.* Here, no admissible evidence supports holding Mr. David in contempt, let alone clear and convincing evidence. The district court wrongly concluded that because Mr. David's role as CEO meant he was bound by the Injunction, he was also personally liable for FilmOn.Com's conduct. While an officer's actions can be imputed to a corporation, a corporation's actions cannot automatically be imputed to its officers or employees. Even though it is sometimes permissible to hold a corporate officer who exercises complete control over the corporation's ability to comply with an order liable for the corporation's actions, *see NLRB v. Hopwood Retinning Co.*, 104 F.2d 302, 305 (2d Cir.1939), that proof must still be significant, and the district court did not rely on this principle in finding Mr. David liable. It simply held that he was bound by the Injunction, and because it was

violated, *he* was also guilty of violating it.

Mr. David does not deny that he is bound by the Injunction, but he cannot be held in contempt where there is no admissible evidence that he had acted in contempt of the Injunction.

The district court also abused its discretion in finding any contempt in spite of the fact that the allegedly contumacious conduct was cured immediately upon notice to Appellants, which was over two weeks prior to the contempt hearing.

Appellees' previous silence as to whether FilmOn X and Teleporter technology violated the Injunction, coupled with the Supreme Court's decision in *Aereo*, rendered the applicability of the Injunction to FilmOn X and Teleporter technologies ambiguous. A genuine, good faith dispute as to the impact of legal precedent cannot serve as the basis for a contempt finding. *Latino Officers Ass'n City of New York, Inc*, 558 F.3d at164 ("a contempt order is a 'potent weapon,'… that is inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct" (internal citations omitted)); *see also*, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) ("If…the law relied on by the party seeking contempt is ambiguous in its application to the challenged conduct, contempt will not lie." (Citing *United States ex rel. IRS v. Norton*, 717 F.2d 767, 774 (3d Cir.1983) ("[A]ny ambiguity in the law should be resolved in favor of the party charged with contempt.")).

In light of those issues, it was also an abuse of discretion to sanction FilmOn.Com and non-party Mr. David and award attorneys' fees to Appellees. This Court should reverse the findings of contempt and all associated penalties.

## **STANDARD OF REVIEW**

This Court reviews contempt orders with an abuse of discretion standard that is more rigorous than usual. *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996) ("Ordinarily, we review the district court's legal determinations *de novo* and its factual determinations for clear error, but, because the power of a district court to impose contempt liability is carefully limited, our review 'of a contempt order for abuse of discretion is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted.'")(Citing *United States v. Local 1804-1, Int'l Longshoremen's Ass'n,* 44 F.3d 1091, 1096 (2d Cir.1995). Similarly, this Court reviews the award and amount of sanctions and attorneys' fees with an abuse of discretion standard. *See id.*; *see also*, *Carco Group, Inc. v. Maconachy*, 718 F. 3d 72, 79 (2d Cir. 2013) ("We review a district court's award of attorneys' fees for abuse of discretion." (*Citing McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir.2010)).

With respect to whether the district court erred in finding Mr. David in contempt in its Order, and then including Mr. David in its definition of "FilmOn" in the Judgment, this Court reviews the contempt order with a "more stringent than

normal" abuse of discretion standard; however, this Court reviews the district court's interpretation of the terms of a consent decree *de novo* and the factual findings that were the basis of the contempt order for clear error. *Perez v. Danbury Hosp.*, 347 F. 3d 419 (2d Cir. 2003) ("Moreover, we review a district court's interpretation of the terms of a consent decree de novo.")

## **ARGUMENT**

### I.    **The District Court Abused Its Discretion In Finding FilmOn in Contempt**

Appellees failed to establish any of the necessary elements; the district court's finding otherwise was an abuse of discretion. These elements are: (1) the order the opponent failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the opponent has not diligently attempted to comply in a reasonable manner. *Parademics Electromedicina Commercial, Ltd. v. GE Med Sys. Info. Techs. Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). The Injunction as it applies to the Teleporter service was not clear and unambiguous. FilmOn X and Teleporter had been operating for months prior to Appellees' contempt filing. Prior to that filing, they had never cited the Injunction as a basis to preclude the operations of FilmOn X or Teleporter, which they certainly could have done even prior to the Supreme Court's *Aereo* decision – of course, a party (here, FilmOn.Com) can agree not to do what is otherwise legal.

But Appellees elected not to raise the Injunction relative to FilmOn X and/or Teleporter. Instead, Appellees went to other district courts, seeking to invalidate the *Aereo* line of cases and limit *Cablevision*. That strategic decision gave rise to ambiguity of the Injunction's application to the FilmOn X technology.

The *Aereo* decision, when coupled with Appellees' previous position, called into question the applicability of the injunction to Teleporter, particularly given questions related to the Section 111 compulsory license. A genuine, good faith dispute as to the impact of legal precedent cannot serve as the basis for a contempt finding. *Latino Officers Ass'n City of New York, Inc.,* 558 F.3d 159, 164 (2d Cir. 2009) ("a contempt order is a 'potent weapon,'… that is inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct" (internal citations omitted)); *see also*, *Chao,* 514 F.3d 280, 292 (2d Cir. 2008) ("If…the law relied on by the party seeking contempt is ambiguous in its application to the challenged conduct, contempt will not lie." (Citing *Norton*, 717 F.2d 767, 774 (3d Cir.1983) ("any ambiguity in the law should be resolved in favor of the party charged with contempt.")). Here, FilmOn.Com took the position that the Injunction did not prevent it from operating as a cable company in light of Appellees' position. FilmOn Network's June 30, 2014 press release did not establish willfulness; rather it evinces FilmOn.Com's position that it would be entitled to operate as a cable company. FilmOn.Com was in the process of

submitting paperwork relating to those licenses. Appellees and the district court may have ultimately disagreed with FilmOn.Com's position, but the issues were far from unambiguous.

The reasonableness of FilmOn.Com's position is further supported by recent statements of FCC Chairman Tom Wheeler, made in the wake of *Aereo*. Chairman Wheeler asked "the Commission to start a rulemaking proceeding in which we would modernize our interpretation of the term 'multichannel video programming distributor' (MVPD) so that it is technology-neutral." He explained that "the definition of an MVPD should turn on the services that a provider offers, not on how those services reach viewers. Twenty-first century consumers shouldn't be shackled to rules that only recognize 20th century technology." (Appellants' Request for Judicial Notice, Ex. A.) Although these statements were published after the contempt hearing, they reflect the dynamic intersection of technology and law that companies like FilmOn.Com must attempt to navigate. As Chairman Wheeler's comments illustrate, the legal and technological landscape is in flux.

The evidence shows that FilmOn X diligently attempted to comply with the Injunction in a reasonable manner, and there was no credible evidence suggesting noncompliance, let alone the required clear and convincing evidence. *Parademics Electromedicina Comercial, Ltd. v. GE Med Sys. Info. Techs. Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). Even against FilmOn.Com, Appellees offered an

unauthenticated press release, a handful of unauthetnicaed third party "articles," and statements from one of their counsel as proof of noncompliance. (A-273 – A-334; A- 528 – A-531). When FilmOn.Com tried to confirm the evidence in counsel's statement, it was unable to. (A-355 – A-358).[9] Not only did Appellants demonstrate that the issue of what was compliant in this context was unclear, Appellants also presented evidence to rebut Appellees' submissions. (A-355 – A-358). The district court stated solely, "Having determined that the Injunction unquestionably disallows the use of mini-antenna technology to broadcast plaintiffs' content, the proof of FilmOn's noncompliance is clear and convincing." The court gave short shrift to the sworn declaration of Ms. Kutovvy and again misconstrued FilmOn Networks' June 30 press release as revealing willful noncompliance. This was clear error. This prong was never satisfied.

Finally, FilmOn.Com's diligent attempt to comply in a reasonable manner bars any finding of contempt. *Parademics Electromedicina*, 369 F.3d at 655. Within hours of learning Appellees' concerns over the Teleporter service, FilmOn X deactivated the technology until it could obtain further clarity on all applicable issues. (A-341 – A-344 at ¶ 11). Additionally, it voluntarily suspended its

---

[99] As soon as FilmOn X learned that Appellees' counsel claimed it was able to access to New York City broadcast content from cities outside of the Second Circuit using the Teleporter service, FilmOn X conducted an investigation into the matter. After testing and analysis of existing data, FilmOn X was "unable to identify any bugs or glitches in [its] system that would explain plaintiffs' ability to access New York City broadcast content from other jurisdictions."[9] (A-355 – A-358, ¶ 12.)

transmission of all network programming using the mini-antenna/DVR technology. (*Id.*). It did so even though Appellees' had always taken the position that the Injunction in this action does not cover that technology or the Teleporter service.

The ambiguity of the Injunction, Appellees' failure to present clear and convincing evidence, and FilmOn.Com's good faith belief that it was not infringing Plaintiffs' intellectual property preclude a finding of contempt. This Court should reverse.

## II.     The Court's Inclusion of Mr. David In The Judgment Was Improper

The district court erred doubly in finding Mr. David in contempt. First, it grossly abused its discretion when it found Mr. David in contempt based solely on statements contained in an unauthenticated press release. (SPA- 15). The district court reasoned that because the press release identifies Mr. David as FilmOn.Com's CEO, he is therefore liable for any wrongful conduct by the company. *Id.* But it is the other way around – FilmOn.Com is liable for Mr. David's conduct in the scope of his employment; Mr. David is not necessarily liable for all acts of the company. That is particularly true in the context of contempt, which is a serious penalty.

Here, there was no admissible evidence in the record that Mr. David personally and willfully violated the Injunction. Plaintiffs provided two Exhibits referencing Mr. David's role as FilmOn.Com's CEO, and another unsubstantiated

hearsay-riddled article about FilmOn, but these exhibits alone are nothing near clear and convincing evidence sufficient to establish any particular role of Mr. David in the purported infringement, let alone that he directed or controlled any infringement. Appellees relied on Mr. David's February 11, 2014 quote to establish his role in any contempt. But February 2014 was more than four months prior to the *Aereo* decision. Mr. David having once said "I'm tired of the majors screwing you, screwing me, and screwing the entire industry, by trying to shut down progress" (A-530) is hardly evidence that he engaged in any contumacious conduct months later.[10]

Mr. David's role as CEO may bind FilmOn.Com by his actions, but it does not mean he is personally liable for everything FilmOn.Com is deemed to have done. The district court abused its discretion when it found Mr. David in contempt. That finding should be reversed.

After wrongfully finding Mr. David in contempt in its July 24 Order, the district court compounded its error in defining "FilmOn" as FilmOn.Com and Mr. David in its final Judgment. (SPA-20). The court's inclusion of Mr. David in the order reflects an error in the interpretation of the terms of the Injunction. The Injunction defines "Defendant" only as FilmOn.Com. (A-141). It then defines the "Parties" as only Plaintiffs and the Defendant. (A-142). Although the Injunction

---

[10] The district court only cited Exhibit 8 in its order, not the other unsubstantiated articles.

goes on to bind Defendant and its employees and affiliates, nowhere does it define FilmOn.Com as FilmOn.Com and Mr. David; nor does it otherwise suggest that Mr. David will automatically be held personally liable for corporate actions. The Injunction contemplates individuals being held liable for violating it, but only with proof of a violation, not bald assertions or the mere fact of their corporate roles. The terms of the consent decree are clear and are supported by the general laws of agency finding a corporation liable for its agents' actions performed in the course of their duties (yet not holding the reverse to be true). Not only was the finding of contempt an abuse of discretion, but the inclusion of Mr. David in the definition of FilmOn was a clear misinterpretation of the terms of the consent decree.

## III.  The District Court Abused Its Discretion In Awarding Sanctions

Civil contempt sanctions differ from criminal contempt sanctions in that they are not meant to punish. As the district court recognized, "[t]he purposes of civil contempt sanctions are twofold: to coerce a defendant into compliance with a court order and to compensate a plaintiff for losses incurred. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 443 (1986)." (SPA-7 – SPA-8). It is undisputed that the sanctions ordered were meant to be coercive. SPA-16 – SPA-17). Although the district court stated that the sanctions were "not punitive" but rather to coerce "future compliance," because the contemptuous

25

conduct had already been cured, the sanctions only function was to punish; that the punishment may have been intended to coerce future compliance does not alter its punitive nature.  The sanctions were improper.  *See Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994).  In *Bagwell*, the Court stated that "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge….Thus, a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Bagwell*, 512 U.S. at 829 (internal citations omitted).

In reaching its conclusion, the district court pointed to an earlier contempt order, issued in October 2013.  (A-267),  At that time, the district court issued a judgment of contempt purporting to bind the parties and requiring FilmOn.Com "to (1) remove all broadcast programming identified by plaintiffs, (2) agree not to stream any of plaintiffs' copyrighted programming using the VOD [Video On Demand] service, and (3) pay a penalty of $10,000 per day of noncompliance." Judgment, Oct. 3, 2013 (the "October Judgment") ¶ 3 (SPA-4; A-267).  This was a prospective penalty for noncompliance that was not agreed to by the parties in the consent decree, and it related to the streaming of copyrighted programming using a video-on-demand service at issue there, not Teleporter or FilmOn X.   The district court's October 2013 Judgment should not have any bearing on recent

proceedings. In addition to the factual differences, that application of that order

runs afoul of the Supreme Court's conclusions in *Bagwell*. There, the trial court,

"simply announced the penalty—determinate fines of $20,000 or $100,000 per

violation—that would be imposed for future contempts." *Id*. at 837. In its review,

the Supreme Court noted,

> The union's ability to avoid the contempt fines was indistinguishable from
> the ability of any ordinary citizen to avoid a criminal sanction by
> conforming his behavior to the law. The fines are not coercive day fines, or
> even suspended fines, but are more closely analogous to fixed, determinate,
> retrospective criminal fines which petitioners had no opportunity to purge
> once imposed. We therefore decline to conclude that the mere fact that the
> sanctions were announced in advance rendered them coercive and civil as a
> matter of constitutional law.

*Id*. The situation here is nearly identical. Appellants were never given any

opportunity to cure the contemptuous conduct with which they were charged; or,

rather, they did cure that conduct, but the district court improperly disregarded that

corrective action. Moreover, the Injunction provided only that violation of it "shall

expose Defendant and all other persons bound by this [Injunction] to all applicable

penalties, including contempt of Court." (A-140). It made no reference to a

specific fine (or to awards of attorneys' fees). Rather, in October 2013, the district

court issued its October Judgment purporting to bind the parties and requiring

FilmOn.Com "to (1) remove all broadcast programming identified by plaintiffs, (2)

agree not to stream any of plaintiffs' copyrighted programming using the VOD

[Video On Demand] service, and (3) pay a penalty of $10,000 per day of

noncompliance." October Judgment ¶ 3 (A-267; SPA-4). This was a prospective penalty for noncompliance that was not agreed to by the parties in the consent decree, and it related to the streaming of copyrighted programming using a video-on-demand service at issue there, not Teleporter. It also violated *Bagwell* in its failure to provide for the opportunity to purge any such conduct prior to a sanction. The court's claim that FilmOn.Com could "purge" the sanction by avoiding it altogether via compliance is misplaced.

FilmOn.Com had already purged any purportedly contumacious behavior. Therefore, no sanctions were warranted. Although coercive sanctions can be used to compel future compliance, there is no basis here to believe that FilmOn.Com will resume the conduct in question or willfully violate the injunction in the future. It voluntarily ceased the conduct *as soon as it was notified of Appellees' position*. (A-341 – A-344). This does not suggest that sanctions would be required to coerce future compliance with the Injunction. Unlike *NLRB v. Local 3, Int'l Bhd. Of Elec. Workers*, 471 F.3d 399, 405 (2d Cir. 2006), this was not a case where prospective compliance fines were agreed upon by the parties to the consent decree. Nor is this a situation where the conduct was clearly understood as violating the injunction or incurring the fine. *NLRB,* 471 F.3d 399, 405 (2d Cir. 2006) was an exception to *Bagwell*, but *Bagwell* controls here, and as such these fines were improperly punitive and should never have been awarded.

**IV.** **Any Award Of Attorneys' Fees Was An Abuse Of Discretion**

This Court reviews "a district court's award of attorney's fees for abuse of discretion which occurs when (1) [the court's] decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *McDaniel*, 595 F.3d 411, 416 (2d Cir. 2010) (internal citations and quotations omitted).

The court's further assessment of attorneys' fees also relied on the incorrect factual determination that FilmOn.Com's conduct was willful. *See* July 24, 2014 Order at 15 ("defendant should be held in contempt for willfully violating its terms."). Willfulness is required for an attorneys' fee award in this context. *New York State Nat. Org. for Women v. Terry*, 952 F.Supp. 1033, 1044 (S.D.N.Y. 1997)(" For the victim of a contempt to be awarded attorneys' fees for prosecuting the contempt, contemnor's conduct must have been willful.") (Citing *Weitzman,* 98 F.3d 717, 719 (2d Cir.1996)); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979) (" it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful.").

Willful contempt sufficient to sustain an attorneys' fee award requires that

the "contemnor … did not make good faith effort to comply." *Terry*, 952 F.Supp.

1033, 1044 (S.D.N.Y. 1997) (quoting *E.E.O.C. v. Local 638, Sheet Metal Workers'*

*Int'l Ass'n*, 889 F.Supp. 642, 670–71 (S.D.N.Y.1995)).  FilmOn.Com made a good

faith effort to comply with the order given its interpretation of the law.

Furthermore, despite legitimately disputing Appellees' interpretation of the law, as

soon as FilmOn.Com was notified of Appellees' motion, it voluntarily ceased all

complained of activity.  These are not the actions of a willful violator of a court

order.  Appellees were certainly not entitled to an award of attorneys' fees, where,

as here, the fees were a "problem" of Appellees' making – they could have avoided

incurring *any* attorney's fees had they merely chosen to meet and confer with

FilmOn.Com about their intended motion.  Appellees chose not to.  As such, the

award of *any* attorney's fees was an abuse of discretion that should be vacated.[11]

---

[11] Lastly, since the initial Injunction made no reference to attorney's fees and only ordered that each party bear its own costs, FilmOn had no reason to expect that it would be forced to compensate Appellees for any enforcement motion.  If anything, the Injunction's directive that each party would bear its own costs suggests that fees would not be awarded automatically.

## **CONCLUSION**

For the reasons set forth above, FilmOn.Com and Mr. David request that this court overturn the contempt ruling and vacate all sanctions and attorneys' fees awarded. Should this Court affirm the ruling of contempt, Appellants ask that the Court reverse all sanctions and attorneys' fees awarded.

By:


/s/      Ryan G. Baker
Ryan G. Baker
Baker Marquart LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
Telephone: (424) 652-7800
Fax: (424) 652-7850
E-Mail: rbaker@bakermarquart.com

*Counsel for Appellants FilmOn.com, Inc.*
*and Alkivaides David*

Dated: December 5, 2014

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Rule 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☑    this brief contains 7178                    words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains
lines of text , excluding the pa rts of the bri ef
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the
type style requirements of Fed. R. App. P. 32(a)(6) because:

☑    this brief has been prepared in a proportionally spaced typeface
using [ Microsoft Word 2010                    ] in
[ Times New Roman, Size 14            ], *or*

☐    this brief has been prepared in a monospaced typeface using
[                                        ] with
[                                        ].

(s)    Ryan G. Baker
_____

Attorney for    Appellants
_____

Dated:    12/5/2014
_____

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Memorandum and Order of the Honorable Naomi Reice Buchwald,
    dated July 24, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

Judgment Appealed From, dated August 14, 2014 . . . . . . . . . . . . . . . . . . . SPA-20

Memorandum of the Honorable Naomi Reice Buchwald Appealed
    From, dated August 14, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-22

# SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
CBS BROADCASTING INC., et al.,

                Plaintiffs,

      - against -             **MEMORANDUM AND ORDER**

FILMON.COM, INC.,              10 Civ. 7532 (NRB)

                Defendant.
---------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On October 1, 2010, plaintiffs -- which include CBS Broadcasting Inc., NBC Studios LLC, Fox Television Stations, Inc., and ABC Holding Company Inc. -- brought this action against defendant FilmOn.com, Inc., alleging infringement of their copyrights in various programs exhibited over their broadcast television stations. The case was closed by entry of the Consent Order of Judgment and Permanent Injunction dated August 8, 2012 (the "Injunction").

On July 3, 2014, plaintiffs moved this Court by order to show cause to hold FilmOn.com, Inc. and its Chief Executive Officer, Alkiviades David (collectively, "FilmOn") in civil contempt. Plaintiffs assert that FilmOn violated the Injunction by using mini-antenna technology (1) to broadcast the networks' copyrighted content within the Second Circuit in violation of the Supreme Court's decision in <u>American Broadcasting Companies,</u>

# SPA-2

<u>Inc. v. Aereo, Inc.</u>, 134 S. Ct. 2498 (2014) ("<u>Aereo</u>"); and (2) to transmit this programming to regions outside the Second Circuit through use of defendant's "Teleporter" system.  For the reasons herein, we agree with plaintiffs and grant their motion.

## BACKGROUND

Nearly four years ago, plaintiffs initiated the aforementioned action, alleging that FilmOn was streaming their broadcast programming without their authorization, thereby infringing their exclusive copyrights in the programming under Sections 106(1)-(5) of the Copyright Act of 1976, 17 U.S.C. § 101 <u>et seq.</u>  Compl. ¶¶ 1-5.  Plaintiffs sought monetary damages and a permanent injunction against FilmOn's retransmission service.  <u>Id.</u>  In July 2012, after the completion of discovery, the parties reached an agreement to resolve the action, the full terms and conditions of which were set forth in a settlement agreement dated July 31, 2012 (the "Settlement Agreement").  The Settlement Agreement was conditioned upon this Court's entry of a stipulated consent judgment and permanent injunction prohibiting FilmOn from further infringing plaintiffs' copyrights.  Settlement Agreement § 4.1.

Accordingly, on August 8, 2012, we entered the parties' Stipulated Consent Judgment and Permanent Injunction, which permanently enjoined:

-2-

# SPA-3

> [FilmOn,] its affiliated companies, and all of its officers, directors, agents, servants, and employees, and all natural and corporate persons in active concert or participation or in privity with any of them . . . from infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106(1)-(5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright.

Injunction ¶ 1. The Injunction further provided that violation of its provisions would expose FilmOn and all other persons bound by the Injunction to "all applicable penalties, including contempt of Court." _Id._ ¶ 2. Finally, it provided that "[t]his Court shall retain continuing jurisdiction over the Parties and the action for purposes of enforcing th[e] [Injunction and Settlement Agreement]." _Id._ ¶ 4.

After the issuance of the Injunction, FilmOn launched a video on demand ("VOD") service, which provided subscribers with access to an archive of previously televised programs for streaming "on demand." On July 2, 2013, plaintiffs moved for an order to show cause why FilmOn should not be found in civil contempt for violating the Injunction based on the VOD service. In a Memorandum and Order dated September 10, 2013, we found that because "FilmOn has offered no evidence whatsoever that they have validly acquired the right to stream plaintiffs' copyrighted programming," FilmOn was in contempt of the

-3-

# SPA-4

Injunction.  CBS Broad. Inc. v. FilmOn.com, Inc., No. 10 Civ. 7532(NRB), 2013 WL 4828592, at *9 (S.D.N.Y. Sept. 10, 2013). Accordingly, we required defendant to (1) remove all broadcast programming identified by plaintiffs, (2) agree not to stream any of plaintiffs' copyrighted programming using the VOD service, and (3) pay a penalty of $10,000 per day of noncompliance.  Judgment, Oct. 3, 2013 (the "Judgment") ¶ 3.  We also compelled FilmOn to pay $115,046.10 in attorneys' fees. Id. ¶ 4.

On June 25, 2014, while the Injunction remained in place, the Supreme Court decided Aereo.  Aereo operated a system "made up of servers, transcoders, and thousands of dime-sized antennas housed in a central warehouse."  Aereo, 134 S. Ct. at 2503.  A key feature of the Aereo system was that each subscriber had one of these dime-sized antennas dedicated to his personal use.  Id. An Aereo subscriber could visit the Aereo website, select a program for viewing, and stream it to his device with a delay of only a few seconds.  Id.  Petitioners in the Aereo action, which included the broadcast networks who are plaintiffs in the instant case, argued that Aereo infringed their right to "perform" their works "publicly," within the meaning of the Transmit Clause of the Copyright Act.  Id. at 2504 (quoting 17 U.S.C. § 106(4)).

-4-

# SPA-5

The Supreme Court found in favor of the broadcast networks, holding "that Aereo 'perform[s]' petitioners' copyrighted works 'publicly,' as those terms are defined by the Transmit Clause" of the Copyright Act.  Id. at 2511.  In so finding, the Court relied on "Aereo's overwhelming likeness to the cable companies targeted by the 1976 amendments" to the Copyright Act and noted that the "sole technological difference between Aereo and traditional cable companies [did] not make a critical difference" in the Court's analysis.  Id. at 2507.  Ultimately, the Supreme Court concluded that "Aereo is not just an equipment supplier" and that its use of the antenna system constituted public performance of the petitioners' protected programming. Id.  This decision overruled the Second Circuit's determination in WNET, Thirteen v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013), that Aereo's retransmission system did not infringe on the networks' copyrights; therefore, the use of Aereo's technology, which had previously been permissible within the Second Circuit, was henceforth barred.  See Aereo, 134 S. Ct. at 2504, 2511. Aereo did not mention, let alone abrogate, WPIX, Inc. v. ivi, Inc., 691 F.3d 275 (2d Cir. 2012) ("ivi").  That case established the law in the Second Circuit that "Internet

# SPA-6

retransmission services do <u>not</u> constitute cable systems under §
111" of the Copyright Act.[1]  <u>Id.</u> at 284 (emphasis added).

Shortly after the <u>Aereo</u> decision, on July 3, 2014,
plaintiffs again applied for an order to show cause why the
Court should not hold FilmOn in contempt for violating the
Injunction.  In this instance, plaintiffs' application was based
on defendant's "operation[] of its 'Teleporter' service and any
other device or process by which it publicly performs
plaintiffs' copyrighted programming."  Order to Show Cause Re
Contempt of Inj. ¶ 2 (July 7, 2014).  FilmOn's Teleporter
service relies on mini-antennas, much like those used by Aereo,
to "allow[] users to virtually view broadcast content from a
distant location that is not necessarily within the local
broadcast geographic area."  Def.'s Mem. of Law in Opp'n to
Order to Show Cause Re Contempt of Inj. ("Def.'s Opp'n") at 10.
Plaintiffs have requested (1) that FilmOn be ordered immediately
to cease offering plaintiffs' copyrighted programming to
subscribers and (2) that the Court impose coercive penalties for
defendant's violation of the Injunction.  Mem. of Pls. in Supp.
of Order to Show Cause at 5.

---

[1] Section 111 of the Copyright Act creates a licensing regime and "permit[s]
cable systems to publicly perform and retransmit signals of copyrighted
television programming to its subscribers, provided they pay royalties at
government-regulated rates and abide by the statute's procedures."  <u>ivi</u>, 691
F.3d at 278 (citing 17 U.S.C. § 111).

-6-

# SPA-7

Plaintiffs' motion for an order to show cause was fully briefed by July 17, 2014, and we held oral argument on the pending motion on July 22, 2014.

## DISCUSSION

"[T]he district courts have the inherent power to find a party in contempt for bad faith conduct violating the court's orders." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010). "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Utica Coll. v. Gordon, 389 Fed. App'x 71, 72 (2d Cir. 2010) (quoting Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004)). Upon finding that a party is in civil contempt, this Court retains "broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." City of New York v. Venkataram, No. 06 Civ. 6578(NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (quoting E.E.O.C. v. Local 28 of Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir. 2001)). The purposes of civil contempt sanctions are twofold: to coerce

-7-

# SPA-8

a defendant into compliance with a court order and to compensate a plaintiff for losses incurred.  <u>Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.</u>, 478 U.S. 421, 443 (1986).

   With regard to the first prong of the test for contempt, an injunction is sufficiently clear and unambiguous to warrant a finding of contempt against a violating party if it leaves "no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden."  <u>Drywall Tapers & Pointers v. Local 530</u>, 889 F.2d 389, 395 (2d Cir. 1989).  Defendant advances two primary arguments in support of its assertion that the Injunction is not clear and unambiguous.  First, FilmOn argues that because "the Injunction does not expressly mention or prohibit the mini-antenna/DVR technology and the related Teleporter service," it cannot be said to clearly and unambiguously prohibit its use.  Def.'s Opp'n at 15.  Second, defendant maintains that "in light of the Supreme Court's findings in <u>Aereo</u>, FilmOn qualifies as a cable system and is entitled to the benefits and responsibilities of the compulsory license scheme under Section 111 of the Copyright Act."  <u>Id.</u> at 18.  As a result, FilmOn asserts that <u>Aereo</u> generated some doubt regarding whether the retransmissions enabled by the mini-antenna system constitute infringement under the Injunction.  Neither of these arguments is persuasive.

# SPA-9

First, defendant's suggestion that the Injunction must list every potential transmission mechanism that it bars in order to be "clear and unambiguous" is simply untenable. As the Supreme Court has noted, "[t]he technology of the Internet evolves at a rapid pace," and an injunction of the sort issued in this case would quickly become obsolete -- and lose its force as a permanent remedy -- if we were forced to name each and every infringing technology. Ashcroft v. ACLU, 542 U.S. 656, 671 (2004). Recognizing the speed of technological advances, the Injunction prohibited FilmOn from infringing, "by any means," plaintiffs' exclusive rights to broadcast its copyrighted programming. Injunction ¶ 1 (emphasis added); see also CBS Broad., 2013 WL 4828592, at *6 (noting that the "scope [of the Injunction] is in no way limited to the precise form of infringement that precipitated" the filing of the initial lawsuit). The fact that the Injunction did not explicitly mention the mini-antenna technology does not render it unclear, and defendant's argument to the contrary is baseless.

FilmOn's second argument is also unavailing because it hinges on a mischaracterization of the holding in Aereo. Defendant is correct that, throughout the Aereo opinion, the Court likened Aereo to a cable company. See, e.g., Aereo, 134 S. Ct. at 2506 ("Aereo's activities are substantially similar to

-9-

# SPA-10

those of the CATV companies[2] that Congress amended the [Copyright] Act to reach."); id. at 2507 (recognizing "the many similarities between Aereo and cable companies").  But defendant attaches far too much importance to the Court's analogizing.  A series of statements that Aereo (and, by extension, FilmOn, "which uses technology identical" to Aereo, Def.'s Opp'n at 16) is very similar to a cable system is not the same as a judicial finding that Aereo and its technological peers are, in fact, cable companies entitled to retransmission licenses under § 111 of the Copyright Act.  Defendant may argue that the Supreme Court's language in Aereo implies that FilmOn may be entitled to a license under § 111, but an implication is not a holding.

In fact, the governing law in the Second Circuit is that services like FilmOn that retransmit broadcast programming are not entitled to compulsory licenses under § 111 of the Copyright Act.  See ivi, 691 F.3d at 284.  Unlike Aereo, which answered the question of whether Aereo "performed" petitioners' copyrighted works "publicly" under the Copyright Act, ivi focused squarely on the issue of whether internet services like FilmOn are cable systems under § 111.  And the ivi Court found that the Copyright Act's "legislative history, development, and

---

[2] The Supreme Court described CATV companies as "the precursors of modern cable systems."  Aereo, 134 S. Ct. at 2504.

-10-

# SPA-11

purpose indicate that Congress did not intend for § 111 licenses to extend to Internet retransmissions." Id. The detailed analysis and ultimate decision of the Second Circuit is not rendered moot by the Supreme Court's use of an analogy in answering an entirely different question. Moreover, given that Aereo never mentioned ivi, let alone purported to overrule it, ivi remains controlling precedent here. See United States v. Mason, 412 U.S. 391, 395 (1973) (stating that when the Supreme Court "did not so much as mention" a decision, it cannot be said to have questioned or overruled that decision). Thus, based on the law in this Circuit, FilmOn is not entitled to a license under § 111, and its retransmissions clearly and unambiguously fall under the scope of conduct barred by the Injunction.

Having determined that the Injunction unquestionably disallows the use of mini-antenna technology to broadcast plaintiffs' content, the proof of FilmOn's noncompliance is clear and convincing. The exhibits submitted by plaintiffs more than adequately demonstrate that FilmOn streamed the networks' copyrighted programming to multiple cities in violation of the Injunction. See Morrow Decl. Exs. 1–2. Although FilmOn implied in its opposition brief that any noncompliance with the Injunction was unintentional, see Def.'s Opp'n at 20, the company's press release of June 30, 2014 belies this assertion.

-11-

# SPA-12

The press release, issued before FilmOn learned of the instant order to show cause but after Aereo, boasts that defendant's mini-antenna technology continued to make available to FilmOn subscribers across the country the local broadcasts of eighteen major American cities, including New York.  See Press Release, FilmOn, FilmOn Networks Continue Offering Broadcast Signals Under Copyright Act of 1976 (June 30, 2014).  Thus, defendant's own statements to the public indicate that it purposefully and willfully streamed plaintiffs' copyrighted content in violation of the Injunction.

Moreover, if we were to give credence to defendant's claim that New York content was made available outside the Second Circuit only accidentally, it does not excuse defendant's decision to continue to broadcast plaintiffs' programming within the Second Circuit after the Aereo decision.  FilmOn has advanced a number of theories about the implications of Aereo, but the holding of that decision could not have been clearer: the use of the mini-antenna technology to retransmit broadcast networks' content without a license violated the Copyright Act.  See Aereo, 134 S. Ct. at 2505-11.  Thus, while the Second Circuit may have previously been a haven for companies like Aereo and FilmOn to employ the mini-antenna technology, after Aereo, that haven no longer existed.  Aereo understood this: in

-12-

# SPA-13

the wake of the Aereo decision, it stopped its operations in the Second Circuit. Press Release, Aereo, A Letter to Our Consumers: Standing Together for Innovation, Progress and Technology (June 28, 2014). By contrast, FilmOn did not stop broadcasting plaintiffs' content until it learned of the instant order to show cause, twelve days after Aereo. Def.'s Opp'n at 10. For nearly two weeks, FilmOn was aware that its operations, based on the Supreme Court's determination, infringed plaintiffs' copyrights, yet defendant continued to purposefully broadcast content within the Second Circuit until it got caught. Therefore, regardless of whether New York programming leaked out of the Second Circuit for reasons beyond defendant's control, the retransmissions within the Second Circuit after Aereo constitute a clear violation of the Injunction.

In addition, assuming that FilmOn believed in good faith that the Aereo decision rendered it qualified to become a cable company under § 111, it would nevertheless have needed to obtain a license from the Copyright Office in order to have been eligible to retransmit plaintiffs' content; judicial opining on the definition of a cable system is no substitute for the mandatory administrative process required for content retransmitters. See Aereo, 134 S. Ct. at 2506 ("Section 111 creates a complex, highly detailed compulsory licensing scheme

-13-

# SPA-14

that sets out the conditions, including the payment of compulsory fees, under which cable systems may retransmit broadcasts."); ivi, 691 F.3d at 283 ("The Copyright Office is the administrative agency charged with overseeing § 111's compulsory licensing scheme."). FilmOn does not have, and has never had, a license from the Copyright Office. Indeed, defendant admits that it did not even apply for a cable license until July 10, 2014, after plaintiff submitted this order to show cause -- a fact that undermines any claim by defendant that it was truly committed to complying with the letter of the law. Def.'s Opp'n at 9; see also id. at 11 (stating that defendant "has undertaken various diligent efforts to ensure ongoing compliance" with the law). Fundamentally, FilmOn cannot choose to ignore the Injunction merely because it anticipated someday being able to retransmit plaintiffs' content legally.

Not only is hope no defense to the violation of an injunction, but defendant's faith that the Copyright Office would grant it a cable license was misplaced. On July 23, 2014, the Copyright Office, citing ivi, expressed its view that FilmOn, as an internet retransmission service, "falls outside the scope of the Section 111 license," and that the Office did not "see anything in the Supreme Court's recent decision in [Aereo] that would alter this conclusion." Boccanfuso

-14-

# SPA-15

Supplemental Reply Decl. Ex. 10.   Thus, not only was FilmOn's expectation of a license irrelevant, but it was erroneous as well.   Moreover, even if the Copyright Office had granted a license to FilmOn, this development would not have excused defendant's decision to preemptively stream content in violation of the Injunction.   The Copyright Office's decision does, however, provide additional support for our conclusion that FilmOn's use of the mini-antenna technology clearly falls within the ambit of the Injunction, and defendant should be held in contempt for willfully violating its terms.

We also find Mr. David in contempt of the Injunction.   The Injunction bound "all of [FilmOn.com's] officers, directors . . . and employees."   Injunction ¶ 1.   These categories clearly encompass Mr. David, who is identified in the company's own press releases as FilmOn.com's "founder and CEO."   Boccanfuso Reply Decl. Ex. 8; see also Fed. R. Civ. P. 65(d)(2) (providing that those bound by an injunction include the officers and employees of all parties who receive actual notice of the court order).   To find otherwise would allow defendant to "nullify a decree by carrying out prohibited acts through [non-parties]," a clearly untenable outcome.   Doctor's Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 302 (2d Cir. 1999) (internal quotation marks omitted).

-15-

# SPA-16

Finally, defendant argues that this contempt should be resolved in the federal courts of California and the District of Columbia, which have also issued injunctions against defendant regarding internet retransmissions of plaintiffs' programming. See Def.'s Opp'n at 18-19. We may easily dispose of this argument, as plaintiff's contempt application is directed to this Court's injunction.

Any remedy must be determined in context. Here, the context includes the fact that this Court has found FilmOn in contempt of the Injunction before, see CBS Broad., 2013 WL 4828592, at *9, and the fact that FilmOn has also been held in contempt in the District Court for the District of Columbia, see Order, Fox Television Stations, Inc. v. FilmOn X LLC, Civil Action No. 13-758 (RMC), at 3 (Nov. 26, 2013). In such a context, it would be reasonable to presume that FilmOn would have proceeded cautiously. However, instead of seeking a modification of the Injunction or any other form of relief from this Court, defendant made the unilateral decision to stream plaintiffs' programming across the country. The consequence of that choice is this decision.

The sanctions we impose are not punitive, but civil in nature, as they "serve the purpose of coercing future compliance" with the Injunction. NLRB v. Local 3, Int'l Bhd. Of

-16-

# SPA-17

Elec. Workers, 471 F.3d 399, 405 (2d Cir. 2006) (internal quotation marks omitted).  FilmOn has demonstrated a repeated willingness to flout the authority of the federal judiciary, and it is essential for this Court to make clear the obvious: the Injunction and the Judgment are not mere suggestions, but are orders that demand compliance.

## CONCLUSION

Based on the foregoing, we find FilmOn in civil contempt of court for its violation of the Injunction.  Pursuant to paragraph 3 the Judgment, FilmOn must pay $10,000 for each of the nine days of its noncompliance.[3]  Therefore, we impose a sanction of $90,000.  We also reiterate that while it appears that defendant has ceased streaming plaintiffs' programming, such conduct is covered by the Injunction and future retransmission of plaintiffs' copyrighted content without a license will subject defendant to significant penalties per day of noncompliance.

---

[3] FilmOn's rights and responsibilities in this Circuit are tethered to those of Aereo, as both companies employed the same mini-antenna technology to broadcast the networks' programming.  Consequently, it is reasonable to assume that FilmOn would follow Aereo's lead in responding to the Aereo decision.  Aereo did not suspend its operations until June 28, 2014, and we believe it would be unfair to hold FilmOn in contempt for continuing to stream content when Aereo, the company explicitly bound by the Supreme Court's decision, continued to do so itself.  Therefore, we find that FilmOn's noncompliance began on June 29, 2014, the day after Aereo stopped retransmitting content in the wake of Aereo, and ended on July 7, 2014, the day FilmOn deactivated its mini-antenna service.

# SPA-18

Plaintiffs are also entitled to attorneys' fees in an amount to be determined. Plaintiffs' counsel shall submit on notice a proposed form of judgment, supported by an affidavit detailing their attorneys' fee request, to this Court on or before July 30, 2014. FilmOn's counter proposal, if any, shall be filed no later than August 5, 2014.

**SO ORDERED.**

Dated:    New York, New York
          July 24, 2014

_(signature)_

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-18-

**SPA-19**

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Counsel for Plaintiffs**
Peter L. Zimroth, Esq.
Arnold & Porter, LLP
399 Park Avenue
New York, NY 10022

Robert Alan Garrett, Esq.
Hadrian R. Katz, Esq.
C. Scott Morrow, Esq.
Arnold & Porter, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004

Paul M. Smith, Esq.
Jenner & Block LLP
1099 New York Avenue, Suite 900
Washington, DC 20001-4412

**Counsel for Defendant**
Ryan G. Baker, Esq.
Baker Marquart LLP
10990 Wilshire Blvd., Fourth Fl.
Los Angeles, CA 90024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

CBS BROADCASTING INC.,                                          :
CBS STUDIOS INC.,                                              :
BIG TICKET TELEVISION, INC.,                                   :
NBC STUDIOS LLC,                                               :
OPEN 4 BUSINESS PRODUCTIONS LLC,                              :
UNIVERSAL NETWORK TELEVISION, LLC,                            :
NBC SUBSIDIARY (KNBC-TV) LLC,                                 :
TWENTIETH CENTURY FOX FILM CORPORATION,   :   Civil Action No. 1:10-cv-7532
FOX TELEVISION STATIONS, INC.,                                :   (NRB)
ABC HOLDING COMPANY INC.,                                     :
AMERICAN BROADCASTING COMPANIES, INC.,     :
and DISNEY ENTERPRISES, INC.,                                 :
                                                              :
                  Plaintiffs,                                 :
                                                              :
          v.                                                  :
                                                              :
FILMON.COM, INC.,                                             :
                                                              :
                  Defendant.                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/15/2014

~~[AMENDED] [PROPOSED] FORM OF~~ JUDGMENT

**WHEREAS**, this Court has properly asserted jurisdiction over this dispute and personal

jurisdiction over defendant FilmOn.com, Inc. and its principal, Mr. Alkiviades David (collectively

"FilmOn");

**WHEREAS**, in its Memorandum and Order of July 24, 2014 ("Order"), the Court held

FilmOn in civil contempt for violating the Stipulated Consent Judgment and Injunction entered

on August 8, 2012 (the "Injunction");

**WHEREAS,** in its Order, the Court concluded that FilmOn must pay $10,000 for each of

the nine days of its noncompliance with the Injunction and the attorneys' fees plaintiffs incurred

in connection with this contempt proceeding;

# SPA-21

**WHEREAS,** in its Order, the Court concluded that future violations of the Injunction will subject FilmOn to significant penalties per day of noncompliance; and for good cause shown;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.    FilmOn, within ten days of entry of this Judgment, shall pay sanctions in the amount of $90,000.00.

2.    Any future violation of the Injunction will subject defendant to a penalty of $~~7~~ *2* 0,000.00 per day of noncompliance. *NRB*

3.    FilmOn, within ten days of entry of this Judgment, shall pay plaintiffs' attorneys' fees in the amount of $ *56,562.20* ~~101,850.65~~. *NRB*

Dated: New York, New York
      August *14*, 2014

**SO ORDERED:**

_____

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

2

## SPA-22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CBS BROADCASTING INC., et al.,

                    Plaintiffs,

        - against -                              M E M O R A N D U M

FILMON.COM, INC.,                                10 Civ. 7532 (NRB)

                    Defendant.
----------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/15/2014
```

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


        We file this brief Memorandum to explain our decision to
reduce the attorneys' fees awarded to plaintiffs from the amount
sought in the Amended Proposed Judgment submitted to the Court
on July 31, 2014.   As established by our July 24, 2014
Memorandum and Order, plaintiffs are entitled to reasonable
attorneys' fees for their prosecution of a successful contempt
motion against defendant.   CBS Broad. Inc. v. FilmOn.com, Inc.,
No. 10 Civ. 7532(NRB), 2014 WL 3702568, at *7 (S.D.N.Y. July 24,
2014).   In calculating reasonable attorneys' fees, we are
mindful that while "parties to a litigation may fashion it
according to their purse," it is not necessarily appropriate to
require the losing party to wholly compensate the prevailing
party for its approach to the litigation.   Farmer v. Arabian Am.
Oil Co., 31 F.R.D. 191, 193 (S.D.N.Y. 1962), rev'd, 324 F.2d 359

# SPA-23

(2d Cir. 1963), rev'd, 379 U.S. 227 (1964); see also Queenie, Ltd. v. Nygard Int'l, 204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002).

Here, while we are not awarding to plaintiffs compensation for all hours billed by their counsel, we do not question the accuracy of the submission in support of the fee request, both in terms of the hours spent and the rates charged. Moreover, our reduction of the fees sought was not motivated by any judgment that plaintiffs did not receive full value for the time billed. Rather, our decision to reduce the fee amount is based on our view that what may be a reasonable sum to charge clients for attorneys' services is not necessarily equivalent to a reasonable fee to compel a losing party to pay to its adversary at the conclusion of litigation.


Dated:     New York, New York
           August 14, 2014


                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE